UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WENDY HILL<br>c/o Spangenberg Shibley & Liber, LLP<br>1001 Lakeside Avenue, East<br>Suite 1700<br>Cleveland, Ohio 44114 | ) | CASE NO. 3:16-cv-104 |
| | ) | |
| | ) | JUDGE RICE |
| | ) | |
| | ) | MAGISTRATE JUDGE NEWMAN |
| and | ) | |
| | ) | |
| ALICE HILL | ) | **PLAINTIFFS' FIRST AMENDED** |
| c/o Spangenberg Shibley & Liber, LLP | ) | **COMPLAINT** |
| 1001 Lakeside Avenue, East | ) | |
| Suite 1700 | ) | **Jury Demand Endorsed Herein** |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AARON HILL, a minor, through his | ) | |
| guardian Wendy Hill, | ) | |
| c/o Spangenberg Shibley & Liber, LLP | ) | |
| 1001 Lakeside Avenue, East | ) | |
| Suite 1700 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BROOKE HILL, a minor, through her | ) | |
| guardian Wendy Hill, | ) | |
| c/o Spangenberg Shibley & Liber, LLP | ) | |
| 1001 Lakeside Avenue, East | ) | |
| Suite 1700 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Five or More John/Jane Doe Unknown | ) | |
| Officers of the Wright-Patterson Air Force | ) | |
| Base Police | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Staff Sergeant Kyle Brophy | ) | |
| Security Force | ) | |
| Wright-Patterson AFB | ) | |

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

Ohio, 45433                                      )
                                                 )
  and                                  )
                                                 )
Officer Nicholas Smith                           )
Security Force                                   )
Wright-Patterson AFB                             )
Ohio, 45433                                      )
                                                 )
  and                                  )
                                                 )
Master Sergeant Ronnie Lewis Jr.                 )
Security Force                                   )
Wright-Patterson AFB                             )
Ohio, 45433                                      )
                                                 )
  and                                  )
                                                 )
Senior Airmen Andrew Cockerham                   )
Security Force                                   )
Wright-Patterson AFB                             )
Ohio, 45433                                      )
                                                 )
  and                                  )
                                                 )
Staff Sergeant Marco Chaparro                    )
Security Force                                   )
Wright-Patterson AFB                             )
Ohio, 45433                                      )
                                                 )
  and                                  )
                                                 )
Officer Jonathan Vance                           )
Security Force                                   )
Wright-Patterson AFB                             )
Ohio, 45433                                      )
                                                 )
_____        )

   For their First Amended Complaint, Plaintiffs state and aver upon information and

belief:

2

**INTRODUCTION**

1.      This is a civil rights claim arising from the improper stop, search, and restraint of Plaintiffs on April 4, 2014, while Plaintiffs were in their own vehicle at the National Museum of the United States Air Force adjacent to the Wright-Patterson Air Force Base.

2.      This Complaint includes a jury demand.

**PARTIES**

3.       At all times relevant, Plaintiffs Wendy, Aaron, and Brooke Hill were United States citizens residing in Franklin County, Ohio.

4.      At all relevant times, the United States Air Force operates a civilian police force operating at the Wright-Patterson Air Force Base, as well as the National Museum of the United States Air Force.

5.      Defendants are being sued in their individual capacities as agents of the Air Force, and are referred to collectively as "Officers."

6.      The Officers involved in the incident that forms the basis for Plaintiffs' claims were employed by the United States Air Force and, in doing all the things described herein, were acting under color of federal authority and under color of the statutes, regulations, customs and/or usages of the Air Force.

7.      The Officers were employees of the United States or an agency thereof acting in their official capacity or under color of legal authority, or an agency of the United States, or the United States.

8. The true identity and addresses of the Officers, including the Five or More John/Jane Doe Unknown Officers, can be learned through discovery or the Court's intervention.

9. At all times relevant, Defendants had a duty to obey the United States Constitution and the laws and statutes of the United States, the state of Ohio, and the city of Riverside, Ohio.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as certain claims in this civil action arise under the Constitution and laws of the United States, including the Fourth and Fourteenth Amendments to the United States Constitution.

11. Plaintiffs asserts claims pursuant to the authority of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971).

12. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. This Court is the proper venue under 28 U.S.C. § 1391(e)(1) because Plaintiffs reside in this district.

## COMMON FACTS

14. On April 4, 2014, the Air Force Museum at the Wright-Patterson Air Force Base in Dayton, Ohio, received a call that someone believed they saw somebody casing cars in the parking lot, they have been trying doors, and they entered a vehicle blue Honda Odyssey minivan.

4

15.     The Defendants were told the people did not enter any other vehicles.

16.     Unidentified Officers sought out the minivan and found it exiting the facility.

17.     This is the minivan they pulled over:

 



SPANGENBERG SHIBLEY & LIB

18. Wendy, her two children Aaron and Brooke, and her mother-in-law Alice were visiting the Air Force Museum at the Wright-Patterson Air Force Base in Dayton, Ohio.

19. The family was on a road trip, returning to their home in the Columbus area.

20. On their way out of the Air Force Museum, at around 3:40 p.m., Aaron and Alice walked around looking at car license plates to see all the different states that were represented.

21. The family then got in their minivan to leave.

22. On the way out of the parking lot, they stopped to look at a car Aaron liked, but did not exit the vehicle.

23. While attempting to exit the parking area, the family was stopped by three police vehicles.

24. The officers knew or should have known no crime had been committed.

25. The officers knew or should have known there was no basis to suspect the vehicle occupants of having committed a crime.

26. The officers knew or should have known there was no basis to suspect the vehicle occupants of posing a threat to the officers.

27. The officers ran the vehicle license plate number through the Law Enforcement Automated Database System, or LEADS, which showed the minivan's Vehicle Identification Number was similar to—but not the same as—the Vehicle Identification Number for a 12x5 foot utility trailer with flooring and a Georgia license plate.

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

6

28.     Any reasonable investigation would have shown the minivan was properly registered to the driver, not stolen, not a trailer, and not registered in Colorado.

29.     There was no basis to believe the vehicle they pulled over was stolen.

30.     The officers initiated a "high risk" "felony" traffic stop of the minivan.

31.     Four officers, three in military fatigues, and one in traditional police blues, guns drawn, ordered the family out of the vehicle.

32.     They instructed Alice: "Driver put your hands on the roof. Use your right hand and turn off the ignition. Put the keys out the window. Drop them. Get out of the car. Keep your hands up. Walk backwards toward my voice."

33.     Wendy's daughter, Brooke, who is 5 years old, is able to clearly see the officer with a gun and asks "Is Baba [grandma] going to get shot?"

34.     Both children are crying uncontrollably and very loudly at this point.

35.     While Wendy is trying to calm the children, she hears an instruction for "passenger."

36.     Because of the children crying, she could not hear the whole instruction.

37.     She raised my hands and yelled out that she could not hear.

38.     Wendy was quite afraid that she would be shot.

39.     After yelling a couple of times that she could not hear, she was able to hear the command to open the door, and complied.

40.     Wendy was instructed to keep her hands up.

41.     She did as instructed, walking backward with her hands in the air toward the voice until he told her to stop.

7

42.    The officer then instructed her to put her hands at her lower back, then raise her jacket and turn around completely with her eyes closed. She did as instructed.

43.    The officer then instructed her to lower her arms at her lower back again and, when she complied, he approached her and attempted to put on handcuffs. They would not go on so he walked her back and got another pair and I was cuffed.

44.    Alice and Wendy were brought together at the back passenger wheel of the police car and put on their knees on the pavement, in clear view of the passing traffic.

45.    Wendy instructed the officer that she had a bad hip while he walked me back to the car.

46.    While secured on their knees on the pavement with handcuffs on, at least one officer was holding on to each of them.

47.    Wendy and Alice could hear the children screaming from the van.

48.    Wendy asked an officer to have someone go to the children, as they were very scared and confused, but none of the officers responded or went to help the children.

49.    Wendy and Alice were handcuffed without being asked for ID or registration, while the children were screaming.

50.    Wendy and Alice were forced to kneel on the concrete for 20 minutes.

51.    While being held on their knees on the pavement, Wendy heard the officers call out "passenger put your hands up."

52.    The only people left in the car were the children.

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

53.     Wendy panicked at this as she was afraid for the children's lives, and she still had no idea why this was happening. The officers gave the instructions a couple more times. Alice and Wendy are both stating that the kids are the only ones there.

54.     The officer holding onto Wendy and Alice told us they were "following procedure."

55.     Wendy cannot see the van or the other officer calling out to the "passenger."

56.     The officer got the kids and put them in the back of the police car.

57.     Wendy hears "the juveniles in the car are secure and the vehicle is empty" on the radio.

58.     Wendy asked if they could sit on the curb beside us due to their discomfort kneeling on the pavement. She was ignored.

59.     Finally, Wendy and Alice were placed, still in restraints, in separate cruisers for 40 minutes.

60.     Alice had to be helped up and she was led to a car behind the one the kids were in.

61.      Wendy asked the officer to please shield her hands to prevent her children from seeing their mother in handcuffs.  He did not and led her past the car with her children.

62.     Wendy was put in the car and the seat belt was secured. The officer walked away and came back after a bit to move the car to the other side of the road. By this point the belt had come up to Wendy's neck and was uncomfortable. He moved it down and locked the belt so there was no slack. The seat belt had come back up over

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

her chest and was against her neck again. This made her have to lean back against the seat into the handcuffs. She was left in this position for a long time, long enough to leave a red mark on her neck. She called out to the officers for help to try to get their attention, but they ignored her cries. No one came. She was pinned to the back of the seat laying against her cuffed wrists in a painful way for an extended period of time.

63.     Eventually, after about 40 minutes in the car, and being questioned twice, they are told that someone called 911 to say a man was checking car doors in the parking lot.  Also, their VIN number came back as a "partial match," having 7 numbers in common with a stolen trailer in Colorado.

64.     Presumably they got the VIN from running the van's license plate, which showed it was not a trailer.

65.     After being released, Brooke asked why Wendy was "in chains."  She was humiliated that her children witnessed this and angered that they were so scared.

66.     Alice asked for a copy of the report and was told they would not be given one.

67.     A supervisor apologized for the inconvenience, but said they were acting according to policy for a "high-risk felony stop."

68.     Alice and Wendy both had marks on their wrists from the handcuffs that lasted well into the night.

69.     Wendy had a red mark on her neck from the seat belt. Wendy's left arm remained sore and numb.  She also had right shoulder pain from restraint in car, and hip pain from ordeal.

70.    The traffic stop was traumatic for Aaron and exacerbated his separation anxiety and concerns for his mom's safety.  Aaron has expressed fear over the police, and increased separation anxiety.

71.    The traffic stop was traumatic for Brooke.  Brooke was diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood. In counselling, Brooke presented with symptoms of anxiety (including some separation anxiety) and depressive symptoms, as well as having vivid nightmares and stomach aches.  These symptoms were related to the family's experience with the traffic stop.

72.    The children have undergone counselling related to the traffic stop.

73.    Despite repeated requests, the government will not disclose the names of the officers who conducted, authorized, or ratified the stop.

74.    Plaintiffs are pursuing exhaustion of administrative remedies for a Federal Tort Claims Act claim and will amend this Complaint to add that claim against the United States once the administrative process has been exhausted.

**FIRST CAUSE OF ACTION**
**(*BIVENS* CLAIM - VIOLATION OF FOURTH AMENDMENT)**

75.    Plaintiff incorporates all other paragraphs of this Complaint as if fully rewritten herein.

76.    The Officers knew or should reasonably have known the Ohio minivan was not a stolen trailer from Colorado.

77.    No exigent circumstances existed justifying the use of the "high risk felony stop" techniques.

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

78.     Plaintiffs were cooperative in every way with the Officers during the incident.

79.     Faced with the circumstances present at the time of the stop, reasonably prudent Officers would or should have known that executing a "high risk felony stop" on a mom with two children and a grandmother, in a properly registered and licensed minivan, while refusing to explain the circumstances or basis for the stop, brandishing drawn firearms, handcuffing and detaining the mom and grandmother on their knees on the pavement, terrorizing the family including the small children, violated Plaintiffs' well-established Fourth Amendment right to be free from unreasonable searches and seizures.

80.     The Officers acted maliciously, wantonly, or oppressively, demonstrating a reckless or callous disregard for, or deliberate indifference to, Plaintiffs' rights and violating Plaintiffs' rights with unnecessary harshness, malice or severity, by the Officers' misuse or abuse of authority and/or power.

81.     By reason of the Officers' conduct described herein, Plaintiffs were deprived of their right to be secure in their person and effects against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the Constitution of the United States.

82.     As a direct and proximate result of the Officers' actions and omissions, Plaintiffs suffered physical discomfort, extreme indignity, embarrassment, humiliation, and fear during the course of the restraint and search, and suffered and continue to suffer mental anguish and emotional pain and suffering.

12

83.     Plaintiffs demand judgment against Defendants, jointly and severally, for an amount in excess of $75,000.00 which will fully, fairly and adequately compensate Plaintiffs for their injuries, damage and loss, costs and reasonable attorneys' fees associated with this action, and any other relief this Court deems just.

84.     Plaintiffs also demand punitive damages in an amount to be adduced at trial against Defendants, individually and collectively, in order to punish the Officers for their misconduct, and to serve as an example or warning to others not to engage in such conduct.

### SECOND CAUSE OF ACTION
### (*BIVENS* CLAIM - VIOLATION OF FOURTEENTH AMENDMENT)

85.     Plaintiffs incorporate all other paragraphs of this Complaint as if fully rewritten herein.

86.     The conduct, actions and omissions of the Officers described herein violated Plaintiffs' right to be free from the deprivation of liberty and property without due process of law.

87.     The Officers knew or should reasonably have known the Ohio minivan was not a stolen trailer from Colorado.

88.     No exigent circumstances existed justifying the use of the "high risk felony stop" techniques.

89.     Plaintiffs were cooperative in every way with the Officers during the incident.

90.     Faced with the circumstances present at the time of the stop, reasonably prudent Officers would or should have known that executing a "high risk felony stop" on

SPANGENBERG SHIBLEY & LIBER LLP   CLEVELAND, OHIO

a mom with two children and a grandmother, in a properly registered and licensed minivan, while refusing to explain the circumstances or basis for the stop, brandishing drawn firearms, handcuffing and detaining the mom and grandmother on their knees on the pavement, terrorizing the family including the small children, violated Plaintiffs' well-established Fourteenth Amendment right to be free from the deprivation of their liberty and property without due process of law.

91.     The Officers acted maliciously, wantonly, or oppressively, demonstrating a reckless or callous disregard for, or deliberate indifference to, Plaintiffs' rights and violating Plaintiffs' rights with unnecessary harshness, malice or severity, by the Officers' misuse or abuse of authority and/or power.

92.     By reason of the Officers' conduct described herein, Plaintiffs were deprived of their right to be secure in their person and effects against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the Constitution of the United States.

93.     As a direct and proximate result of the Officers' actions and omissions, Plaintiffs suffered physical discomfort, extreme indignity, embarrassment, humiliation, and fear during the course of the restraint and search, and suffered and continue to suffer mental anguish and emotional pain and suffering.

94.     Plaintiffs demand judgment against Defendants, jointly and severally, for an amount in excess of $75,000.00 which will fully, fairly and adequately compensate Plaintiffs for their injuries, damage and loss, costs and reasonable attorneys' fees associated with this action, and any other relief this Court deems just.

14

95.     Plaintiffs also demand punitive damages in an amount to be adduced at trial against Defendants, individually and collectively, in order to punish the Officers for their misconduct, and to serve as an example or warning to others not to engage in such conduct.

**<u>A TRIAL BY JURY IS HEREBY DEMANDED.</u>**


*/s/ William B. Eadie*
WILLIAM B. EADIE (0085627)
NICHOLAS A. DICELLO (0075745)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio  44114
(216) 696-3232 | (216) 696-3924 (FAX)
*weadie@spanglaw.com*
*ndicello@spanglaw.com*

***Counsel for Plaintiff***

## **CERTIFICATE OF SERVICE**

I certify that on April 1, 2016, I electronically filed the foregoing Plaintiffs' First Amended Complaint with the Clerk of Courts using the CM/EFC system, which will send notice to all counsel registered in the CM/ECF system.

/s/ William B. Eadie
WILLIAM B. EADIE (0085627)

**Counsel for Plaintiff**